STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DONNIE RAY LANE,

    Plaintiff,

v.                                                  Case No: 6:16-cv-2160-Orl-37TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Donnie Ray Lane appeals to this Court from Defendant, the Commissioner of Social Security's final decision to deny his applications for disability insurance benefits and supplemental security income. I have reviewed the record, including the administrative law judge's ("ALJ") decision, the exhibits, and the joint memorandum submitted by the parties. For the following reasons, I respectfully recommend that the Commissioner's final decision be **affirmed**, pursuant to sentence four of 42 U.S.C. § 405(g).

## Background[1]

At the time of the administrative hearing, Plaintiff was fifty-two years old (Tr. 40-41). He had a general education diploma and past work experience as a donut baker and dough mixer (Id.; Tr. 57). On March 8, 2013, Plaintiff applied for benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. § 416, 423, alleging a disability onset date of October 18, 2012 (Tr. 17, 203-216). His claims were denied initially and on reconsideration (Tr. 132-142, 146-150). At Plaintiff's request, the ALJ held a hearing on

---

[1] The information in this section comes from the parties' joint memorandum filed on September 20, 2017 (Doc. 18).

April 8, 2015 (Tr. 37-62). The ALJ issued an unfavorable decision on May 18, 2015 (Tr. 12-36). Plaintiff asked the Appeals Council to review the ALJ's decision and on October 14, 2016, the Appeals Council denied the request for review (Tr. 3-10). The ALJ's decision became the Commissioner's final decision and this appeal timely followed (Doc. 1). Plaintiff has exhausted his administrative remedies and his case is ripe for review.

## The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the Commissioner's five-step sequential evaluation process which appears in 20 C.F.R. § 416.920(a)(4). The ALJ must determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner. Id., at 1241 n.10; Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since his October 18, 2012 alleged onset date (Tr. 17). At step two, the ALJ found Plaintiff was severely impaired by: hypertension and degenerative disc disease of the cervical and lumbar spine (Id.). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (Tr. 17-18). Before proceeding to step four, the ALJ decided that Plaintiff had the residual functional capacity ("RFC") to,

> [P]erform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can sit, stand and walk six hours in an eight-hour workday, and he can lift 20 pounds occasionally and 10 pounds frequently. The claimant would require work which is simple and unskilled, or very low semi-skilled in nature, which are tasks performed so frequently as to be considered routine, even though the tasks themselves might not be considered simple. The claimant needs to avoid frequent ascending and descending stairs. The claimant should avoid frequent pushing and pulling motions with his lower extremities within the aforementioned weight restrictions. Due to mild to moderate pain and medication side effects, the claimant should avoid hazards in the work place such as unprotected areas of moving machinery; heights; ramps; ladders; scaffolding; and on the ground, unprotected areas of holes and pits. The claimant could perform each of the following postural activities occasionally: balancing, stooping, couching, kneeling and crawling, but not climbing of ropes or scaffolds and ladders exceeding 6 feet. The claimant has non-exertional mental limitations which frequently affect his ability to concentrate upon complex or detailed tasks, but he would remain capable of understanding, remembering and carrying out job instructions as defined earlier; making work related judgments and decisions; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting.

(Tr. 19-27). At step four, the ALJ found Plaintiff unable to perform past relevant work (Tr. 27). But, the ALJ ultimately concluded at step five that there were jobs in the national economy–like cafeteria attendant, luncheon room attendant, and advertising material distributor–that Plaintiff could perform and therefore, he was not disabled (Tr. 27-28).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as

adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

### A. Plaintiff's RFC Assessment was Based on Substantial Evidence

Plaintiff argues that his RFC assessment was not based on substantial evidence because the ALJ applied incorrect legal standards to the consideration of the medical opinions provide by Drs. Patel, Hate, Rodriguez, and Yatham (Doc. 18 at 8-16). Weighing the findings and opinions of treating, examining, and non-examining physicians is an integral part of steps four and five of the sequential evaluation process. The Eleventh Circuit clarified the standard the Commissioner is required to utilize when considering medical opinion evidence in Winschel. There, the court held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it

and the reasons therefor. 631 F.3d at 1178-79; see also Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). Absent good cause, the opinions of treating physicians must be accorded substantial or considerable weight. Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). Good cause to reject exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory[2] or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir.1991).

When a treating physician's opinion does not warrant controlling weight, the ALJ must still consider the following factors in deciding how much weight to give the medical opinion: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical issues at issue; (6) other factors which tend to support or contradict the opinion." Logreco v. Astrue, No. 5:07-cv-80-Oc-10GRJ, 2008 WL 783593, at *10 (M.D. Fla. Mar. 20, 2008). Regardless of whether controlling weight is appropriate, "the Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." Hill v. Barnhart, 440 F. Supp. 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted); see also Sullivan v. Comm'r. Soc. Sec., No. 6:12-cv-996-Orl-22, 2013 WL 4774526, at *7 (M.D. Fla. Sept. 4, 2013); Bumgardner v. Comm'r Soc. Sec., No. 6:12-cv-18-Orl-31, 2013 WL 610343, at *10 (M.D. Fla. Jan. 30, 2013); Bliven v. Comm'r Soc. Sec., No. 6:13-cv-

---

[2] When a treating physician makes conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

1150-Orl-18, 2014 WL 4674201, at *3 (M.D. Fla. Sept. 18, 2014); Graves v. Comm'r Soc. Sec., No. 6:13-cv-522-Orl-22, 2014 WL 2968252, at *3 (M.D. Fla. June 30, 2014).

    1. Dr. Patel

The ALJ gave one of treating physician Anil Patel's opinions "some weight," and another "little weight" (Tr. 26-27). Plaintiff argues that the ALJ failed to offer a reasonable explanation of why he didn't assign greater weight to Dr. Patel's opinions (Doc. 18 at 13-14). Plaintiff also accuses the ALJ of dismissing Dr. Patel's opinions with cursory statements (Id.). Plaintiff argues that as a result of this alleged mishandling of Dr. Patel's opinions, we have no way of knowing how the ALJ factored Dr. Patel's opinions into the formulation of Plaintiff's RFC (Id. at 13).

Contrary to Plaintiff's arguments, I find that the ALJ could not have been more clear about his reasons for assigning Dr. Patel's opinions "some" and "little" weight. The ALJ wrote:

> The claimant initiated treatment at Center Health Care for Primary Specialists with Anil R. Patel, M.D. in February 2012 ... Dr. Patel completed a physical residual functional capacity in April 2013. The claimant's diagnosis was chronic low back pain, cervicalgia, and muscle spasms. The claimant's symptoms included low back pain, cervicalgia, muscle spasms, and numbness in the upper and lower extremities. The claimant had drowsiness, dizziness and nausea for side effects of medication. The claimant's physical problem caused anxiety and depression. Dr. Patel indicated that the claimant's symptoms frequently interfered with attention and concentration needed to perform even simple word tasks. The claimant could sit, stand, and walk less than two hours in an eight-hour workday. The claimant would need a job that permitted shifting changes at will from sitting, standing or walking. He would need to take unscheduled breaks during an 8-hour workday. The claimant could rarely lift 20 pound, occasionally lift 10 pounds and frequently lift less than 10 pounds. The claimant could rarely turn his head, stoop, crouch or climb. The claimant could never twist. Dr. Patel indicated that the claimant would be absent from work more than four days.

(Tr. 21-22). The ALJ analyzed Dr. Patel's opinion and while he accepted some portions of it, he rejected other portions. The ALJ's ultimate conclusion was that Dr. Patel's opinion was not supported by the evidence and that the record evidence actually supported contrary findings:

> Dr. Patel opined that the claimant could sit, stand and walk less than two hours in an eight-hour workday and rarely lift 20 pounds. The claimant could rarely turn his head. Normally a treating physician's opinion is accorded greater weight; however, the opinion must be supported by the overall objective medical evidence. The claimant had MRIs of the lumbar spine that did reveal some disc protrusions at L4-5 and L5-S1. However, there are no disc herniations and only mild stenosis noted. The MRI of the cervical spine in 2009 showed only mild bulging at C2-3, C5-6, C6-7. Dr. Patel's own progress notes show a normal gait and station normal coordination, normal muscle strength and tone and normal sensation ... due to the claimant's essentially normal neurological evaluations and normal gait and station, the undersigned does not accord great weight to the opinion of no prolonged sitting or standing ... Although Dr. Patel indicated in June 2013, that the claimant may need to occasionally use a cane for walking and standing, progress notes showed that the claimant ambulated without an assistive device. His gait has consistently been normal throughout the medical records with one exception in February 2014. Subsequent evaluations have shown a normal gait. The claimant also has hypertension, which is controlled when he takes his medications as prescribed. The claimant has not suffered from any cardiovascular disease secondary to hypertension . . . Though Dr. Patel and the claimant allege side effects of nausea and headaches, the medical evidence does not disclose any major concern about side effects by his doctors who have examined and treated the claimant ... Accordingly, the undersigned accords some weight to Dr. Patel, but accords substantial weight to the state agency opinion in regards to sitting, standing, and walking as well as postural restrictions ... The undersigned does not find significant neck limitations as the MRI findings of the cervical spine were only mild. The undersigned does however find more restrictive postural and environmental restrictions outlined in the residual functional capacity. In summary, the claimant can perform the wide range of light exertion ... Even though Dr. Patel opined that the claimant's symptoms would frequently interfere with attention and concentration, all of Dr. Patel's progress notes throughout show the claimant's mood and affect as normal. In

> fact in January 2014, the clamant reported no difficulty with reporting activities of daily living. His appetite and sleep were described as normal. The pain management evaluation showed the claimant's recent and remote memory intact. His mood and affect were normal. Moreover, the claimant has not sought any mental health treatment for any mental impairment complaints. The claimant did not testify to any major concerns of depression or anxiety. The undersigned accords little weight to Dr. Patel's opinion in regards to the claimant's mental restrictions as Dr. Patel is not a mental health expert.

(Tr. 25-27) (internal citations omitted). On this record, I respectfully recommend the Court find that the ALJ properly weighed Dr. Patel's opinions, and adequately explained why they were not given controlling weight. See Phillips, 357 F.3d at 1240-41.

  2. Drs. Hate and Rodriguez

Plaintiff argues that the ALJ erred by affording "substantial weight" to Dr. Nitin Hate's opinion and "some weight" to Dr. Cori Rodriguez's opinion, even though those doctors' opinions were rendered several years prior to Plaintiff's alleged onset of disability date (Doc. 18 at 14-15). Plaintiff argues that these opinions should carry no weight (Id. at 15).

Plaintiff has not cited case law supporting his argument that the ALJ committed error in assigning weight to Dr. Hate and Dr. Rodriguez' opinions. Plaintiff doesn't even cite to the relevant social security ruling. This violates Local Rule 3.01(a), which mandates that, "[i]n a motion or other application for an order, the movant shall include a concise statement of the precise relief requested, a statement of the basis for the request, and a memorandum of legal authority in support of the request ..." M. D. Fla. R. 3.01(a). A motion that is devoid of any legal authority in support of its argument as to why the movant is entitled to relief shall be denied. Cf. Supermedia, LLC v. W.S. Mktg., Inc., No. 8:11-cv-296-T-33TBM, 2011 WL 3625627, at *2 (M.D. Fla. Aug. 17, 2011); Hickman v. Wal-Mart Stores, 152 F.R.D. 216, 219 (1993); Lanzaro-Schroeder v. Schroeder, Case

No. 6:13-cv-1404-Orl-36TBS, 2014 U.S. Dist. LEXIS 63061, at *2 (M.D. Fla. April 9, 2014).

ALJs are permitted to consider evidence prior to the onset date of disability if that evidence "sheds light on the disability during the relevant time period" (Jensen v. Colving, No. 2:13-cv-803, 2014 WL 2159050, at *3 (D. Utah May 23, 2014)), or makes the record "complete" (Chiles v. Colvin, Civil Action No. 3:12-cv-3516-L-BH, 2014 WL 630888, at *10 (N.D. Tex Feb. 18, 2014)). The ALJ referenced the medical opinions of Drs. Hate and Rodriguez in his discussion of Plaintiff's medical history. The ALJ included these opinions in his overview of the longitudinal history of Plaintiff's condition and treatment (Tr. 25). Plaintiff has not established that the ALJ's inclusion of this evidence is prejudicial and I respectfully recommend the Court reject Plaintiff's argument in this regard.

### 3. Dr. Yatham

Plaintiff argues that the ALJ committed reversible error by failing to assign any weight to Dr. Padmaja Yatham's opinion (Doc. 18 at 15). Plaintiff maintains that Dr. Yatham's treatment notes and resulting opinion provide support for his complaint that he is limited in his ability to walk and use his upper extremities:

> [Plaintiff] was seen by Dr. Yatham for three visits in 2014. [Plaintiff] was first seen by this doctor with complaints of headaches; neck pain radiating into his shoulders and bilateral upper extremities; upper, mid and low back pain with radiation into his lower extremities; numbness in hands and fingers; and back spasms and pain radiating into the lower extremities aggravated by walking. During examination, Dr. Yatham indicted [Plaintiff] had decreased upper and lower extremity strength rated as 4/5 and a positive straight leg test. Dr. Yatham also found [Plaintiff] to have a decreased range of motion in his shoulders, cervical spine and lumbar spine.

(Id.) (citing Tr. 828). Plaintiff saw Dr. Yatham on February 24, 2014, March 10, 2014, and April 21, 2014 for headaches, neck pan radiating into the shoulders and upper extremity bilaterally, upper back pain, mid back pain and lower back pain radiating into the lower

- 9 -

extremity bilaterally (Tr. 821-831). Dr. Yatham's evaluations relied heavily on Plaintiff's subjective complaints (Tr. 828). Dr. Yatham diagnosed Plaintiff as having lower back pain, lumbosacral radiculitis, and lumbar disc protrusion (Tr. 824, 830). Dr. Yatham performed a lumbar epidural steroid injection and an epidurogram on Plaintiff (Tr. 830). Plaintiff was prescribed a back brace and medication therapy (Tr. 831). Notably, although Dr. Yatham did not opine that Plaintiff was able to work, she did state that Plaintiff could wear the back brace to work (Id.). Plaintiff told Dr. Yatham that he experienced pain relief from the injection and requested to receive another one (Tr. 824). On follow up, Plaintiff advised Dr. Yatham that his headache, neck pain, and stiffness intensified since he had undergone the injection procedure (Tr. 821).

The Commissioner concedes that the ALJ failed to address Dr. Yatham's treatment notes, but argues that "[b]ecause Dr. Yatham did not offer an opinion as to how Plaintiff's condition affected his ability to work, any oversight by the ALJ in not weighing each and every statement by the doctor that might be considered opinion was at most harmless error" (Doc. 18 at 21). I agree. It is true that Dr. Yatham diagnosed and treated Plaintiff, but I do not find in the record, an opinion from Dr. Yatham concerning Plaintiff's work-related/functional limitations. Merely referencing diagnoses and surmising that they would possibly impact Plaintiff's functioning is insufficient at this stage in the litigation. See Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of ... impairments does not reveal the extent to which they limit [Plaintiff's] ability to work or undermine the ALJ's determination in that regard."); Ward v. Astrue, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) ("[A] 'mere diagnosis ... says nothing about the severity of the condition ... [D]isability determinations turn on the functional consequences, not the causes, of a claimant's condition'") (internal citations omitted).

Furthermore, Plaintiff has not presented any evidence to show that he was prejudiced by the ALJ's failure to weigh Dr. Yatham's testimony or by a determination by Dr. Yatham that Plaintiff was more restricted than what was accounted for in Plaintiff's RFC. Cf. Snell v. Comm'r Soc. Sec., Case No. 6:12-cv-1542-Orl-22TBS, 2013 U.S. Dist. LEXIS 185166, at *9 (M.D. Fla Dec. 6, 2013) (The ALJ's error must result in prejudice, such that had the ALJ done things differently, the residual functional capacity consideration, and ultimate disability decision, would be different) (citing James v. Astrue, No. 3:11-cv-226-J-TEM, 2012 U.S. Dist. LEXIS, at 6-7 (M.D. Fla. Mar. 12, 2012)). Therefore, I respectfully recommend the Court reject Plaintiff's argument.

    B.  The Vocational Expert Hypothetical was Based on Substantial Evidence

Plaintiff argues that had the ALJ properly considered the opinions of Drs. Patel, Hate, Rodriguez, and Yatham, he would have posed a hypothetical question to the vocational expert (VE) that "accurately characterize the claimant's limitations" (Doc.18 at 22-26). Plaintiff also argues that "the ALJ concluded that [he] would have moderate limitations in concentration, persistence and pace. However, the hypothetical posed to the [VE] did not even include these limitations, specifically there is nothing in the hypothetical concerning ... limitations in pace." (Id. at 24).

"Mental limitations such as concentration, persistence, and pace, are generally considered as part of the psychiatric review technique [PRT] described in 20 C.F.R. §§ 404.1520a and 416.920a, in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." Kinnard v. Astrue, No. 8:09-cv-628-T-24AEP, 2010 WL 3584583, at *5 (M.D. Fla. Aug. 26, 2010) (citing SSR 96-8p, 1996 SSR LEXIS 5). The PRT and the RFC are distinct. Winschel, 631 F.3d at 1180. When the ALJ makes a finding that a claimant is limited in maintaining concentration, persistence or pace as part of the PRT, the ALJ must account for those limitations in the hypothetical

question to the VE **unless** "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," in which case, "limiting the hypothetical [either explicitly or implicitly] to include only unskilled work sufficiently accounts for such limitations." Id.; see also Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 872 (11th Cir. 2011) (an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite concentration deficiencies.).

Here, the ALJ noted that "[t]he claimant would require work which is simple and unskilled, or very low semi-skilled in nature, which are tasks performed so frequently as to be considered routine, even though the tasks themselves might not be considered simple" (Tr. 19). In formulating Plaintiff's RFC, the ALJ considered – and rejected – Dr. Patel's testimony that "claimant's symptoms frequently interfered with attention and concentration needed to perform even simple word tasks." (Tr. 22). The ALJ ultimately determined that "[e]ven though Dr. Patel opined that the claimant's symptoms would frequently interfere with attention and concentration, all of Dr. Patel's progress notes throughout show the claimant's mood and affect as normal" (Tr. 26). I have already concluded that the ALJ's treatment of the opinions of Drs. Patel, Hate, Rodriguez, and Yatham's was proper. See section A, supra. Therefore, I conclude that the ALJ's hypothetical to the VE was based on substantial evidence.

## Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Commissioner's final decision in this case be **AFFIRMED,** and that the Clerk be directed to enter judgment accordingly and **CLOSE** the file.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida on January 12, 2018.

*[signature]*

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record